UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Keith Lamar Garrett, Jr.,<br><br>Defendant. | No. 23-cr-372 (NEB/DLM)<br><br>**REPORT AND RECOMMENDATION** |

On November 9, 2023, Keith Lamar Garrett, Jr. was charged in a five-count indictment with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Counts 1, 2, and 4); Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 3); and Possessing Firearms in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5). (*See generally* Doc. 13.) This matter is before the Court on Mr. Garrett's Motion to Dismiss Counts 1, 2, and 4 of the Indictment (Doc. 23); Motion to Suppress Evidence (Doc. 24); and Motion for a *Franks*[1] Hearing (Doc. 27). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court addresses the above motions in this Report and Recommendation, ultimately recommending denial of each.

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

## BACKGROUND

On October 19, 2023, Officer Justin Bowman applied for a warrant to search "[t]he residence, apartment, or building listed, any attached or detached garages, all outbuildings, storage sheds or lockers, and the entire premises thereof, on the person, described as: 173 McKnight Rd. N. apt. [XXX][2] St. Paul MN." (Doc. 26-1 at 4.) Among the items sought were "[c]ocaine and all other controlled substances and narcotic drugs as defined in Minnesota Statutes Chapter 152; [s]cales and drug paraphernalia as described in Minnesota Statutes Chapter 152, and all other items commonly used in the manufacture and/or distribution and/or consumption of controlled substances." (*Id.* at 3.) Officer Bowman provided several grounds as a basis for issuing the warrant, but relevant to Mr. Garrett's motions to suppress evidence and motion for a *Franks* hearing was the following paragraph:

> Within the last 24 hours, your affiant contacted Agent Simo Peinovich of the Dakota County Drug Task Force and requested that he respond with his canine partner "Doc" to 173 McKnight Rd. N., St. Paul to conduct an open air canine sniff of the door, door seam, and door frame of 173 McKnight Rd. apt. [XXX] St. Paul MN. Once on site, Agent Peinovich allowed his canine partner "Doc" to check the area in the apartment building hallway that included several doors on the same floor for the presence of a narcotic odor. After their investigation was complete, Agent Peinovich advised your affiant that "Doc" alerted to the presence of a narcotic odor at the threshold of apartment number [XXX][.] It should be noted that Agent Peinovich and his canine partner "Doc" are a certified police narcotic detecting canine team so recognized by the United States Police Canine Association at the regional level. Agent Peinovich and his canine partner "Doc" have in excess of 100 hours of training and is certified to alert to the odor of various narcotics including but not limited to the narcotics [c]ocaine, [m]ethamphetamine, [c]rack, [e]cstasy, and [h]eroin.

---

[2] The Court has replaced the true apartment number associated with the search with "XXX".

(*Id.* at 6.)

The same day, Ramsey County District Judge John Guthmann issued a search warrant for "[t]he residence, apartment, or building listed, any attached or detached garages, all outbuildings, storage sheds or lockers, and the entire premises thereof, on the person, described as: 173 McKnight Rd. N. apt. [XXX] St. Paul MN[.]" (*Id.* at 9.)

On October 20, 2023, law enforcement executed the search warrant and discovered several items including a TCL flip phone; money; a Taurus Model PT709, 9mm pistol and ammunition; a Glock Model 17 Gen5, 9mm pistol and ammunition; a baggy of blue pills; and a baggy of white powder. (*Id.* at 13, 15, 16, 17, 18.) Based in part on the items discovered during the execution of the search warrant, on November 9, 2023, Mr. Garrett with charged with the instant offenses. (*See generally* Doc. 13.)

During the pendency of his case, Mr. Garrett requested, and the government disclosed, a deployment report related to the drug dog sniff of apartment XXX. The report—written by Agent Simo Peinovich on Thursday, October 19, 2023, before Officer Bowman submitted his search warrant application—stated in relevant part:

> On 10/19/23 my K9 partner, Doc, and I were requested by [Dakota County Drug Task Force] Agent Bowman to conduct an apartment door sniff for the target of his investigation. Prior to arriving at the level where the target door was located, I had Doc check 6 doors prior to the target door with no indication. When Doc got to [apt. XXX] (the target door) I indicated to the door seam of the apartment. Doc showed a clear behavior change, sourcing the odor to the apartment door seam and showing his final indication (a sit) at the door seam. Agents then left the building.

(Doc. 27-1 at 1-2.)

**ANALYSIS**

Mr. Garrett moves the Court to dismiss Counts 1, 2, and 4 of the Indictment arguing that these charges violate the Second Amendment of the United States Constitution; for a *Franks* hearing alleging that the search warrant affidavit omitted statements that were material to a probable cause determination; and to suppress the evidence discovered during the execution of the search warrant because the warrant was not supported by probable cause because it was based on evidence obtained from an unlawful drug dog sniff of apartment XXX that violated the Fourth Amendment of United States Constitution. The Court addresses each motion below.

I. **MR. GARRETT'S MOTION TO DISMISS COUNTS 1, 2, AND 4 OF THE INDICTMENT SHOULD BE DENIED.**

Mr. Garrett moves the Court, under Federal Rule of Criminal Procedure 12(b), to dismiss Counts 1, 2, and 4 on the basis that 18 U.S.C. § 922(g)(1) is both facially unconstitutional and unconstitutional as applied to him under the Second Amendment of the United States Constitution. For the reasons below, this Court recommends that Mr. Garrett's Motion to Dismiss be denied.

For dismissal, Mr. Garrett relies on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), in which the Supreme Court announced that the government may not constitutionally regulate firearm possession unless the regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127. Since *Bruen*, a split of authority in the federal circuit courts of appeal has developed regarding the validity of § 922(g). On one hand, the Third Circuit, sitting en banc, has found it unconstitutional as applied to the appellant in that case. *Range v. Att'y Gen. United*

4

*States of Am.*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc). The Eighth Circuit, however, has found the law to be constitutional. *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023).

Mr. Garrett concedes that current Eighth Circuit law requires this Court to deny his Motion. Even so, Mr. Garrett states that he filed his Motion to Dismiss Counts 1, 2, and 4 of the Indictment to preserve the issue. (Doc. 23 at 1.) *Jackson* is binding authority. Thus, this Court agrees with Mr. Garrett that based on present law, the Court must deny this motion in full. The Court therefore recommends that Mr. Garrett's Motion to Dismiss Counts 1, 2, and 4 of the Indictment (Doc. 23) be denied.

## II.   MR. GARRETT'S MOTION FOR A *FRANKS* HEARING SHOULD BE DENIED.

Mr. Garrett moves the Court for a *Franks* hearing, alleging that discrepancies between the October 19, 2023 drug dog sniff deployment report and the search warrant application amount to false statements or material omissions. According to Mr. Garrett, the warrant application suggested that the drug dog, Doc, examined several apartment doors on the same floor as the target apartment before alerting on the target door, whereas the deployment report indicates the tester doors were all on a different floor than the target apartment door. This discrepancy, the argument goes, impacts the probable cause finding because it calls into question the reliability of Doc's work. The government, for its part, asserts that no discrepancy exists between the deployment report and the search warrant application. But even if such a discrepancy were to exist, according to the government, Mr. Garrett has provided no evidence to show that it was made knowingly and intentionally or

with reckless disregard for the truth, or that the allegedly omitted facts were necessary to the finding of probable cause for the warrant.

A *Franks* hearing is warranted only if Mr. Garrett can make a "substantial preliminary showing that the warrant's issuing judge relied on statements in an affidavit that were false or were omissions made knowingly and intentionally or with reckless disregard for the truth." *United States v. Mayweather*, 993 F.3d 1035, 1043 (8th Cir. 2021) (internal citations omitted). Allegations alone are not enough. *United States v. El-Amin*, 574 F.3d 915, 925 (8th Cir. 2009). The *Franks* substantial showing "requirement is not met lightly and requires [Mr. Garrett] to offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (citing *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007)). Mere allegations of negligence or innocent mistake will not suffice. *Williams*, 477 F.3d at 559. Mr. Garrett "must also show that the alleged false statement or omission was necessary to the finding of probable cause." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008) (quoting *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002)).

Mr. Garrett argues that he is entitled to a *Franks* hearing because, as he alleges, law enforcement omitted statements found in the drug dog's deployment report from the search warrant affidavit knowingly and intentionally, or with reckless disregard for the truth. The relevant part of the warrant affidavit states,

> Agent Peinovich allowed his canine partner "Doc" to check the area in the apartment building hallway that included several doors on the same floor for the presence of a narcotic odor. After their investigation was complete, Agent Peinovich advised your affiant that "Doc alerted to the presence of a narcotic odor at the threshold of apartment number [XXX][.]"

(Doc. 26-1 at 6.) Mr. Garrett asserts that the following bolded portions of the deployment report were knowingly and intentionally omitted, or omitted from the search warrant affidavit with reckless disregard for the truth:

> On 10/19/23 my K9 partner, Doc, and I were requested by DCDTF Agent Bowman to conduct an apartment door sniff for the target of his investigation. **Prior to arriving at the level** where the target door was located, **I had Doc check 6 doors** prior to the target door **with no indication**. When Doc got to [apt. XXX] (the target door) **I indicated to the door seam** of the apartment. Doc showed a clear behavior change, sourcing the odor to the apartment door seam and showing his final indication (a sit) at the door seam. Agents then left the building.

(Doc. 27-1 at 1-2) (emphasis added). Mr. Garrett contends that this omitted statement was pertinent to the issuing judge's finding of probable cause because, had the statement been included, there would have been reason to doubt the drug dog's reliability and thus no basis to find probable cause for the warrant.

There does appear to be a facial discrepancy between the drug dog's deployment report and the search warrant affidavit. The government suggests that there is no discrepancy because the phrase "several doors on the same floor" in the affidavit *could* really mean all the tester doors were on the same floor as each other but on a different floor than the target door. That is a strained interpretation. The more reasonable reading of the affidavit is that Doc sniffed other doors on the same floor of the target apartment, and the most reasonable read of the dog's deployment report is that it sniffed other doors on a *different* floor than the target apartment.

But a *Franks* hearing is not appropriate just because of a discrepancy. Mr. Garrett must show that this discrepancy constitutes a knowing and intentional omission, or one

7

made with reckless disregard for the truth; *and* that the omitted information was necessary to the issuing judge's finding of probable cause for the search warrant.

As to the former, there is nothing directly in the record to show intentional or reckless conduct by the warrant affiant. Here, the government's point that the affidavit and deployment report can be harmonized is well taken. An affiant is doing a poor job of falsifying statements or recklessly omitting material when their affidavit hews so near its source documents, after all. The fact that the deployment report may, in fact, be entirely consistent with the less-than-precisely-drafted affidavit suggests no misconduct.

But even if this Court were to find that this discrepancy was made knowingly and intentionally, or with reckless disregard for the truth, Mr. Garrett has not shown that the highlighted information was necessary to the issuing judge's finding of probable cause. The thrust of the discrepancy relates to which floor Doc checked doors before sniffing the target door. There is no question, however, that both the deployment report and the warrant affidavit indicate Doc did not alert on any other doors except the target apartment door. Also importantly, the warrant affidavit included information about Doc's certification and training as a drug sniff dog, and Mr. Garrett does not fault the dog's (or Agent Peinovich's) training and certification records. Regardless of the way the dog arrived at the target door, the warrant affidavit's representation that the drug dog and Agent Peinovich are "a certified police narcotic detecting canine team" that has been "recognized by the United States Police Canine Association at the regional level" and has an "excess of 100 hours of training" to detect "the odor of various narcotics including but not limited to the narcotics [c]ocaine, [m]ethamphetamine, [c]rack, [e]cstasy, and [h]eroin" established probable cause

8

for the search warrant. (Doc. 26-1 at 6.) *See Florida v. Harris*, 568 U.S. 237, 246 (2013) ("[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert."); *see also United States v. Sundby*, 186 F.3d 873, 875-76 (8th Cir. 1999) ("A dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable.") (collecting cases).

Mr. Garrett posits that the sentence "[w]hen Doc got to [apt. XXX] (the target door) I indicated to the door seam of the apartment[,]" (Doc. 27-1 at 2) casts doubt on the dog's reliability because by "indicat[ing] to the door seam" (*id.*), the law enforcement handler improperly cued the drug dog to provide an unreliable alert at the target door. Improper cuing can affect the reliability of a drug dog examination. *Cf. United States v. Heald*, 165 F. Supp. 3d 765, 780 (W.D. Ark. 2016) (finding possibility of unintentional cuing exists where evidence showed drug dog "followed [officer's] hand almost the entire time," "sniffing low" when the officer pointed low, "sniffing high" when the officer pointed high, and jumping through a window when the officer "flicked his wrist toward the open window.") But here, Mr. Garrett has provided no evidentiary support that by indicating to the target door the handler somehow cued the dog's positive alert. Unlike the dog in *Heald*, who may have simply been following his handler's commands, Doc "showed a clear behavior change, and showed "his final indication (a sit) at the door seam" after conducting the sniff. (Doc. 27-1 at 2.)  In light of the team's certification and training (leaving aside the validation of their investigation by finding controlled substances in the apartment), the Court cannot infer cuing where the drug dog's partner simply directed Doc where to sniff.

9

The Court recommends that Mr. Garrett's Motion for a *Franks* Hearing (Doc. 27) be denied.

### III. MR. GARRETT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED.

Finally, the Court addresses Mr. Garrett's Motion to Suppress Evidence. In this motion, Mr. Garrett argues that evidence discovered during the execution of the search warrant at apartment XXX should be suppressed because there was no probable cause for the search warrant. Mr. Garrett asserts that the warrantless drug dog sniff of the apartment door was unconstitutional and without the dog's positive alert, there was no probable cause for the search warrant. The government counters that the dog sniff of the apartment door was not a search for Fourth Amendment purposes and therefore no warrant was required. As a result, Doc's positive alert was properly part of the issuing judge's probable cause calculus.

#### A. Mr. Garrett has standing to challenge the constitutionality of the search warrant.

As a threshold matter, the government asserts that Mr. Garrett lacks standing to challenge the constitutionality of the search warrant for apartment XXX. According to the government, because Mr. Garrett's name is not on the apartment's lease and he does not pay rent, he has no reasonable expectation of privacy in the apartment and thus may not challenge the constitutionally of the search warrant for the apartment. But the government points to no evidentiary support—either within the four corners of the search warrant or beyond—for this claim.

Instead, the warrant affidavit itself supports the Court's conclusion that Mr. Garrett is a resident or at least a long-term guest of the apartment's tenant T.S. The affidavit states,

> [y]our affiant spoke with apartment complex management on 10/17/23 and found that [T.S.] is renting apartment [XXX] of 179 McKnight Rd. N, St. Paul MN. Your affiant believes that Keith Garrett is involved in the sale of controlled substance and is staying with [T.S.] at 173 McKnight Rd. N. apt. XXX] St. Paul.

(Doc. 26-1 at 6.) The Court finds that, based on the information within the four corners of the search warrant affidavit, Mr. Garrett has standing to challenge the search warrant's constitutionality. *Accord Minnesota v. Olson,* 495 U.S. 91, 96-97 (1990) ("[Mr.] Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable.").

**B.     The warrant was not unconstitutional.**

The Fourth Amendment requires that "no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Williams*, 477 F.3d at 557 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should read affidavits with "common sense and 'not in a . . . hyper technical fashion.'" *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Walden v.*

11

*Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)). Courts may only consider the information found within the four corners of the affidavit in determining whether probable cause for the warrant exists. *United States v. Hussein*, No. 20-cr-75 (ADM/BRT), 2020 WL 7685372, at *2 (D. Minn. Oct. 21, 2020), *R. and R. adopted*, 2020 WL 7310899 (D. Minn. Dec. 11, 2020). Reviewing courts accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)).

### 1. *Under Eighth Circuit precedent, a drug dog sniff of a doorway in a common apartment hallway is not a search for Fourth Amendment purposes.*

Mr. Garrett asserts that the dog sniff of the apartment door was a search within the meaning of the Fourth Amendment and therefore required a warrant. According to Mr. Garrett, because the dog sniff itself was conducted without a warrant, the search was unconstitutional and therefore could not provide probable cause for the warrant to search the apartment.

In *United States v. Scott*, the Eighth Circuit held that "Supreme Court and Eighth Circuit precedent support the conclusion that [a drug dog's] sniff of the apartment door frame from a common hallway did not constitute a search subject to the Fourth Amendment." *United States v. Scott,* 610 F.3d 1009, 1016 (8th Cir. 2010). Mr. Garrett argues that although the Eighth Circuit has not expressly overruled *Scott*, this Court should

rely on *Jardines*[3] and the Eighth Circuit's post-*Jardines* cases—which Mr. Garrett argues abrogate *Scott*—to extend *Jardines* to this case and find that the dog sniff at the door seam of apartment XXX was a Fourth Amendment search that required a warrant.

Although presented the opportunity, the Eighth Circuit has "neither expressly overruled *Scott* nor explained how *Jardines* applies to apartment doors in a common hallway." *United States v. Perez*, 46 F.4th 691, 697-98 (8th Cir. 2022). This is true despite *Jardine*'s issuance over a decade ago.

While the Court harbors serious doubts about the viability of *Scott* in light of *Jardines*, *Scott* is still the law of the Circuit. Thus, there was no constitutional infirmity in the warrantless drug dog sniff which occurred in the apartment building's common hallway—and, as discussed further below, certainly not law so clear that no officer could rely on the warrant in good faith.

> 2. **The drug dog's positive alert established probable cause for the search warrant.**

The Court now turns to the constitutionality of the search warrant for apartment XXX. "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 568 U.S. at 246; *see also Sundby*, 186 F.3d at 876 ("A dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable.") (collecting cases). "If a bona fide organization has certified a dog after testing [their] reliability in a

---

[3] *Florida v. Jardines*, 569 U.S. at 1, 11-12 (2013) (holding "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment").

13

controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Harris*, 568 U.S. at 246-47.

Here, as explained above, the search warrant affidavit stated that the drug dog "alerted to the presence of a narcotic odor at the threshold of apartment number [XXX][.]" (Doc. 26-1 at 6.) It likewise averred that

> Agent Peinovich and his canine partner "Doc" are a certified police narcotic detecting canine team so recognized by the United States Police Canine Association at the regional level. Agent Peinovich and his canine partner "Doc" have in excess of 100 hours of training and is certified to alert to the odor of various narcotics including but not limited to the narcotics [c]ocaine, [m]ethamphetamine, [c]rack, [e]cstasy, and [h]eroin.

(*Id.*) This representation is enough to support probable cause for the search warrant. *Harris*, 568 U.S. at 246-47; *see also Sundby*, 186 F.3d at 875-76.

Mr. Garrett again asserts that Agent Peinovich improperly cued Doc, tainting the dog's positive alert, and therefore casting doubt on the alert's reliability. According to the affidavit, Doc was directed where to sniff ("the door, door seam, and door frame" of the target apartment), and alerted to the presence of drug odors on the target apartment door. (Doc. 26-1 at 6.) The affidavit also established that Doc and Agent Peinovich were a certified police narcotic detecting canine team, and had in excess of 100 hours of training. Ultimately, the question for the Court to decide is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test." *Harris*, 568 U.S. at 248. Here, the affidavit established that the canine team's work was generally reliable based on certification and training, and

reliable in this case by virtue of alerting on the target apartment door after not doing so on several other apartment doors in the complex. As discussed above, Mr. Garrett's cuing argument overstates matters. Directing a drug dog where to focus is not the same as provoking a response once the dog is doing its work. The drug dog's positive alert at the apartment door seam was properly considered by the issuing court, and is sufficient to establish probable cause for the search warrant.

**C.      Even if the search warrant lacked probable cause, the good-faith exception to the exclusionary rule would apply.**

While evidence seized under the authority of a defective warrant will generally be excluded, under the *Leon* good-faith exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Proell*, 485 F.3d at 430 (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (cleaned up)). Here, the drug dog alerted to the presence of narcotics, which also established a nexus between the apartment and contraband. It was reasonable for officers executing the warrant to rely on Eighth Circuit precedent that certified drug dog sniffs to exterior apartment doors are permissible, and alerts based on those sniffs establish probable cause for a search warrant. *See Perez*, 46 F.4th at 698; *Scott*, 610 F.3d at 1016.

15

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Mr. Garrett's Motion to Dismiss Counts 1, 2, and 4 of the Indictment (Doc. 23) be **DENIED**;

2. Mr. Garrett's Motion for a *Franks* Hearing (Doc. 27) be **DENIED**; and

3. Mr. Garrett's Motion to Suppress Evidence (Doc. 24) be **DENIED**.

DATED: April 12, 2024          *s/Douglas L. Micko*
                               DOUGLAS L. MICKO
                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).